Joseph A. SCHULTE, (Plaintiff) Appellant,

v.

Elmer G. FLORIAN, (Defendant) Respondent.

No. 31375.

St. Louis Court of Appeals.

Missouri.

Sept. 17, 1963.

**624**

Sherwood R. Volkman, St. Louis, for appellant.

Robert L. Inman, Clayton, for respondent.

L. F. COTTEY, Special Commissioner.

This case originated in the Magistrate Court of St. Louis County on a petition containing the formal averments of the old common law action of trover, it being alleged that on a certain day plaintiff was the owner of, and entitled to the possession of, a plaster mixing machine of the value of $300 which the defendant then and there "wrongfully took," and that "defendant refused to return the same and unlawfully converted and disposed of said property for his own use." On appeal to the Circuit Court trial was begun before a jury, but at the conclusion of plaintiff's evidence the trial court sustained a motion for directed verdict in defendant's favor and judgment was entered accordingly. The propriety of that ruling is the sole question presented here.

Plaintiff was the only witness who testified. From his rather sketchy account of the affair these facts emerge: Plaintiff was a plastering contractor who owned the machine in question and used it in his work. It was worth its alleged value. During the month of May, 1960, he took the machine to the site of a job on which he expected to be engaged in the near future and left it there. One Schwerdtfeger was the building contractor on that job, and defendant was employed there as a bricklayer. While the machine remained there, unused, Schwerdtfeger called plaintiff's wife one day and stated that one of the bricklayers' machines (presumably defendant's) had broken down. He asked permission to use plaintiff's. Plaintiff's wife replied that plaintiff was absent at the moment but that upon his return she would have him reply to the request. Upon his return plaintiff did call Schwerdtfeger and learned from him that in the meantime the machine had been used without waiting for his permission, "and he said they had cleaned it out and that was all that was said about it."

A week or so thereafter plaintiff went out to the job site, found his machine gone

and, on inquiry, discovered that defendant was using it on another job some distance away. Plaintiff went to that place, picked up his machine without incident and apparently without even seeing defendant, and returned it to its original location. It had been left "in a dirty condition." A day or so later he encountered defendant, asked him "about cleaning the machine, and he told me to have one of my laborers clean it (and) he'd pay for his time." For undisclosed reasons plaintiff rejected that offer and, instead, on various subsequent occasions demanded that defendant clean up the machine which was unusable in its then condition; but, said plaintiff, "every time I talked to him about it he'd walk away or else give me some remark about it, but he never would clean it." This suit followed. Before it came to trial, however, defendant actually did clean up the machine and it was "a good cleaning job, sand-blasted." There was no evidence introduced, and no proof offered, that plaintiff sustained any actual damages on account of defendant's use of the machine or any loss of any kind on account of being deprived of its use. On that showing plaintiff rested and was cast on defendant's motion. Defendant has not favored us with a brief.

We would be warranted in refusing to consider the propriety of the trial court's ruling on the motion because the point has not been properly preserved for review. Plaintiff's motion for new trial recited five so-called "grounds," the first four of which were: "1. Because the verdict is against the law. 2. Because the verdict is against the evidence. 3. Because the verdict is against the law, the evidence, and the law under the evidence. 4. Because the verdict is against the weight of the evidence." (The fifth ground, equally vague, related to the alleged refusal of the trial court to admit certain evidence; but the record discloses no attempt to adduce any such evidence, and no offer of proof was made, and on this appeal the point has been voluntarily abandoned).

All four of the quoted "grounds" have been held to be wholly insufficient to preserve for appellate review the propriety of the trial court's action in sustaining the motion for directed verdict. Commenting on identical assignments in a motion for new trial under review in Marquand Development Corp. v. Maisak-Handler Shoe Co., Mo., 260 S.W.2d 242, l. c. 246, the Supreme Court said: "By the record in this case we are precluded from a consideration of the action of the court in sustaining defendant's motion to dismiss or in directing a verdict for defendants or from determining on this appeal whether appellant made out a submissible case and whether the court erred in refusing to submit such case to the jury. These matters were not preserved for review in plaintiff-appellant's motion for a new trial." For a further discussion of the question and a definitive analysis of the applicable Supreme Court Rules, see The C & O Distributing Co., Inc. v. Milner Hotels, Inc., Mo.App., 305 S.W.2d 737.

It is suggested to us by Rule 79.04, V.A.M.R., however, that we should examine the record for "plain errors affecting substantial rights" and rule on them, even though not properly preserved for review, if we deem that the ends of justice require it. We have made that examination, as our review of the facts discloses, and reluctantly, have concluded that the learned trial court committed a "plain error" in sustaining defendant's motion. Plaintiff's evidence made a submissible case on the question of conversion.

It is true there was no evidence of demand or refusal, but those matters " * * * are merely evidential, not creative, and they need not be shown to make out a case of conversion where some other independent act of conversion (some act in opposition to the rights of the owner) is in evidence." Sigmund v. Lowes, Mo. App., 236 S.W.2d 14, l. c. 19. It is true that there was no direct proof of an unlawful intent on defendant's part in "borrowing" the machine and using it tempo-

rarily "* * * but the intention may be inferred from the facts and circumstances * * *." Pitcock v. Higgins, Mo.App., 239 S.W. 870, 871, and the modern view is that such "* * * question of good faith, and the additional questions or elements of motive, knowledge or ignorance, or care or negligence, are not involved in actions for conversion," 89 C.J.S. Trover and Conversion § 7, pp. 536–537. It is true, as the evidence affirmatively discloses, that defendant had not "disposed of said property for his own use" in the sense of having sold it or otherwise put it permanently beyond plaintiff's reach, but proof of such a permanent and irretrievable disposition of the property is not required to make out a technical case of conversion. And it is true that plaintiff had recovered the machine and had it in his possession at the time the suit was brought, but a return of the property by the wrongdoer operates only in mitigation of damages and not as a bar to the action. 89 C.J.S. Trover and Conversion § 86, supra; Lloyd v. Tracy, 53 Mo.App. 175.

■ The controlling fact shown by the record is that defendant took the machine and used it as if it were his own without plaintiff's permission. That was an "act in opposition to the rights of the owner." That was a conversion of it. "A wrongful assumption of property is not merely evidence of, but actual conversion." Proctor v. Home Trust Co., 221 Mo.App. 577, 284 S.W. 156, 159. Defendant was trespasser with respect to the machine and "* * * trover may be maintained whenever trespass will lie * * *." Pitcock v. Higgins, supra, 239 S.W. 1. c. 871. So, both by his tortious taking and by his proprietary use of the machine defendant effected its conversion. Sigmund v. Lowes, supra, 236 S. W.2d 19. The fact that he made no claim of ownership of the property and did not sell or otherwise permanently dispose of it goes only to the degree of his offense, not to its commission. There was a violation of plaintiff's rights and it was "plain error" to deny him his remedy.

■ The question remains, however, as to whether such error affects any "substantial right" of plaintiff's. His property has been returned to him, it is in good condition, and he has neither proved nor offered to prove any actual damages resulting from defendant's temporary appropriation of it. But, "[a]lthough no actual loss is shown, if there has been a technical conversion the defendant is liable for at least nominal damages." 89 C.J.S. Trover and Conversion § 161, p. 642, supra. And "* * * in this jurisdiction a judgment for nominal damages is a substantial right since such a judgment decides the incidence of the costs." Curd v. Reaban, Mo., 232 S.W.2d 389, 392. The failure to award nominal damages in a proper case "* * * entitles the plaintiff to a reversal of the judgment * * *." State of Missouri, to Use of Goddard, Peck & Co. v. Rayburn et al., 22 Mo.App. 303, 306.

■ The Curd case makes it clear, however, that the failure to award nominal damages violates a plaintiff's *substantial* rights only when, and only because, the judgment carries with it the costs of the action. In that case the trial court, after hearing all the evidence offered by both sides, found the issue in plaintiff's favor but neglected to make an award of nominal damages although the costs were properly taxed against defendant. It was held on appeal that the omission of any award of nominal damages did not, by itself, require a reversal. The judgment was accordingly affirmed; and rightly so, both on the principle expressed by the maxim *de minimis non curat lex* and in furtherance of the public interest in discouraging the protracted litigation of inconsequential grievances. Those same considerations suggest a similarly practical solution for this case; as, for instance, a remand with instructions to the trial court simply to retax the costs against defendant. We may not resort to that expedient here, however, because to do so would be to deprive defendant of his right to have the jury pass on his possible defenses and, incidentally but importantly,

on plaintiff's credibility as a witness. It may well be that on a retrial the jury will find the issues in defendant's favor and thereby relieve him of liability for the costs. At any rate he is entitled to that chance. We reluctantly conclude, therefore, that the judgment must be reversed and the cause remanded for a new trial.

The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by L. F. COTTEY, Special Commissioner, is adopted as the opinion of the Court.

The judgment is accordingly reversed and the cause remanded for a new trial.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.