992 P.2d 42

In the Matter of the Arbitration Between
BANK OF HAWAII, Claimant–
Appellant,

and

James A. DeYOUNG, Respondent,

and

City Bank, Garnishee–Appellee

No. 21394.

Supreme Court of Hawai'i.

Jan. 20, 2000.

Susan Cachero Sakai, Michael C. Webb with her on the briefs, Honolulu, for claimant-appellant.

Gerald I. Fujita, on the briefs, Honolulu, for garnishee-appellee.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by KLEIN, J.

This appeal arises out of a dispute between claimant-appellant Bank of Hawaii (BOH) and garnishee-appellee City Bank (City Bank) regarding the garnishment by BOH of stock pledged as collateral for a loan to City Bank by James DeYoung (DeYoung). After initially granting a garnishment order in favor of BOH, the first circuit court granted City Bank's motion to dissolve the garnishment order on grounds that (1) DeYoung's pledged stock might not be garnishable under Hawai'i law as a debt that was due and owing; and (2) BOH's garnishment of the shares would impermissibly elevate BOH over City Bank in creditor priority.

BOH now appeals from the first circuit court's orders: (1) granting City Bank's motion to dissolve garnishee order, entered on October 15, 1997; and (2) denying claimant BOH's motion for reconsideration of the order, entered on February 4, 1998, granting City Bank's motion to dissolve garnishee order. On appeal, BOH contends that: (1) DeYoung's pledged stock is not a contingent debt, but is an "effect" subject to garnishment; (2) the right of setoff is waived; (3) the parties had adequate opportunity to be heard on garnishment; (4) City Bank's policy argument is misleading; and (5) BOH's motion for reconsideration was proper. City Bank argues, on the other hand, that: (1) its motion to dissolve was properly granted; (2) garnishment of the pledged stock would give BOH, at best, a lien right that cannot be acted upon until its debt is due and owing; and (3) the circuit court's denial of BOH's motion for reconsideration was proper.

Because a secured creditor may not dissolve enforcement proceedings initiated by a judgment creditor against a common debtor where the secured creditor has neither declared its loan in default nor instituted execution of its affirmative remedies under the security agreement, the circuit court erred in granting City Bank's motion to dissolve the garnishment order. We therefore vacate the circuit court's October 15, 1997 order dissolving the garnishment order and remand to the circuit court for reinstatement of its July 16, 1997 garnishment order. However, inasmuch as the July 16, 1997 garnishment order failed to reference City Bank's prior perfected security interest in the shares, we remand with instructions to amend the garnishment order so as to grant City Bank a superior security interest in the 2,125 shares of pledged HBC stock.

## I. *BACKGROUND*

On or about January 25, 1994, DeYoung pledged 2,125 shares of Hawaii Baking Co., Inc. (HBC) stock as a guaranty for a term loan issued to HBC by City Bank pursuant to a security agreement. The shares were subsequently delivered to City Bank in April 1994 to be held during the pendency of the term loan.

Previously, on October 26, 1990, BOH had loaned to DeYoung the principal amount of $500,000 evidenced by a promissory note executed by DeYoung and payable to BOH. When DeYoung defaulted under the parties' second note modification agreement, BOH began collection proceedings against DeYoung and then placed the matter into arbitration.

Following an arbitration hearing, a final award was entered on June 5, 1995, awarding BOH $316,312.00, plus interest. On August 17, 1995, judgment was entered confirming the arbitration award in the amount of $326,452.33.

On June 9, 1997, BOH filed an ex parte motion for issuance of a postjudgment gar-

nishee summons. BOH served the summons on City Bank on June 17, 1997. The summons provided that garnishee must respond either by appearing at a hearing or by filing a written disclosure with the court. Opting for the latter, City Bank filed a formal written disclosure on July 3, 1997, indicating that it was "in possession of that certain Stock Certificate No. 13 for 2,125 shares of the capital stock of Hawaii Baking Co., Inc. issued to [DeYoung]" and that "[s]aid Stock Certificate is pledged as collateral for certain extensions of credit from Garnishee to Hawaii Baking Co., Inc. in the amount of $500,000.00, $3,200,000.00 and $100,000.00." City Bank also asked that it be released as garnishee.

On July 8, 1997, counsel for BOH appeared before the circuit court and requested, pursuant to Hawai'i Revised Statutes (HRS) § 651–47(b) (1993),[1] that an order issue instructing City Bank to surrender Stock Certificate No. 13 to BOH. City Bank did not appear at the hearing. Because it had filed a written disclosure and because of the "negligible interests in its possession," City Bank believed that there was no reason to appear.

On July 16, 1997, the circuit court entered its garnishment order, which provided in pertinent part as follows:

[P]ursuant to the Answer and disclosure of City Bank, City Bank shall forthwith transfer that certain Stock Certificate no. 13 for 2,125 shares of the capital stock of Hawaii Baking Co., Inc. issued to James A. DeYoung to Bank of Hawaii. *Bank of Hawaii is hereby authorized to sell, assign, convey, and transfer said Stock Certificate at either a public or private sale, and apply the proceeds from the sale of said Stock Certificate to amounts due and owing to Bank of Hawaii under the judgment in the above-entitled action entered in favor of Bank of Hawaii on August 17, 1995, and against Defendant James A. DeYoung. The proceeds from said sale will be applied to the principal amount of the judgment, statutory interest at 10%*

---

1. HRS § 651–47(b) provides:

 A security or any share or other interest evidenced thereby which is outstanding and in the possession of a person who is entitled to

 such possession under a security interest or lien or other right of retention therein shall be reached by garnishment as provided in chapter 652.

*per annum through the date sales proceeds are paid to Bank of Hawaii, plus Bank of Hawaii's attorneys' fees and costs. Any surplus proceeds shall be paid to Defendant James A. DeYoung or City Bank at the further order of this Court.*

(Emphases added.)

On August 14, 1997, BOH served the order on City Bank. City Bank thereafter filed a notice of appeal from the garnishment order on August 18, 1997, which was later dismissed by stipulation of the parties. On August 21, 1997, City Bank filed a motion to dissolve the garnishee order under Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b) (1990), requesting relief because: (1) the pledged stock was a "contingent debt" not subject to garnishment under HRS § 652–1 (1993);[2] and (2) the order impermissibly granted BOH priority in the stock. In response, BOH filed its opposition on August 29, 1997, arguing that the pledged stock was not a contingent debt, but, rather, was an "effect" subject to garnishment under HRS § 652–1.

A hearing on City Bank's motion was held on September 16, 1997. On October 15, 1997, the circuit court issued an order granting City Bank's motion to dissolve the garnishee order, providing in relevant part the following:

1. There is an unresolved issue of whether or not the shares of Hawaii Baking Co., ("HBC") stock held as collateral by City Bank are garnishable under Hawai'i law as a debt which is due and owing.

2. Allowing Bank of Hawaii to garnish the shares of HBC stock would unfairly elevate Bank of Hawaii over City Bank in creditor priority. City Bank's priority interest was perfected in 1994. Bank of Hawaii obtained its judgment pursuant to an arbitration award issued and confirmed in 1995. This issue of creditor priority is also unresolved.

Based on the facts and circumstances presented in this case, the Court finds that good cause has been established to dissolve the garnishee order previously issued by the Court on or about July 16, 1997. Therefore, the Motion to Dissolve Garnishee Order filed by City Bank is Granted.

BOH subsequently filed a motion for reconsideration of the order granting City

---

2. HRS § 652–1 provides in pertinent part:

**Garnishee process; "garnishee fund"** (a) Before judgment. When any goods or effects of a debtor are in the possession of an attorney, agent, factor, or trustee (in this chapter jointly and severally included in the term "garnishee"), or when any debt is due from any person (also included under the term "garnishee") to a debtor, or when any person has in the person's possession for safekeeping any moneys of the debtor, any creditor may bring the creditor's action against the debtor and in the creditor's petition for process, or by amendments of the complaint at any time before judgment, after meeting the requirements of section 652–1.5, may request the court to insert in the process a direction that service of a true and attested copy thereof be made upon the garnishee in any of the manners described under section 652–2.5 and to summon the garnishee to appear personally upon the day or term appointed in the process for hearing the action or at any other time appointed by the court and then and there on oath to answer all of the following inquiries, herein inclusively referred to as the "disclosure":

(1) Whether at the time the copy was served on the garnishee, the garnishee had any of the goods or effects of the defendant in the garnishee's hands and, if so, the nature, amount and value thereof;

(2) Whether at the time of service, the garnishee was indebted to the defendant and, if so, the nature and amount of the debt; or

(3) Whether at the time of service on the garnishee, the garnishee had any moneys of the defendant in the garnishee's possession for safekeeping and, if so, the amount thereof.

From the time of service, the garnishee shall secure in the garnishee's hands to pay such judgment as the plaintiff shall recover in the action, such of the following property or chooses then in the garnishee's possession or owing to the defendant as shall equal the amount or value specified in the summons, except what the court has expressly found to be exempt from execution pursuant to section 652–1.5(d) or (f):

(1) The goods and effects of the defendant then in the hands of the garnishee;

(2) Any debt then owing from the garnishee to the defendant;

(3) Moneys of the defendant then in the possession of the garnishee for safekeeping; and

(4) A portion of the defendant's wages, salary, stipend, commissions, annuity, or net income under a trust[.]

Bank's motion to dissolve garnishee order under HRCP Rule 59(e). BOH requested that the circuit court reconsider and vacate the dissolution order, reinstate the garnishment order, and amend the garnishment order to grant City Bank a senior interest in the pledged stock. In the alternative, BOH requested that the pledged stock be subject to attachment. City Bank opposed the motion for reconsideration on the grounds that BOH had not presented new evidence or law in support of its motion for reconsideration.

On February 4, 1998, the circuit court entered its order denying BOH's motion for reconsideration of the dissolution order. BOH timely appealed.

## II. STANDARDS OF REVIEW

### A. Motion to dissolve garnishee order

 The decision whether to grant or deny a motion to dissolve a garnishee order is a question of law. "Questions of law are reviewable de novo under the right/wrong standard of review." *Ditto v. McCurdy*, 90 Hawai'i 345, 351, 978 P.2d 783, 789 (1999) (quoting *Best Place, Inc. v. Penn America Ins. Co.*, 82 Hawai'i 120, 123, 920 P.2d 334, 337 (1996) (citing *State v. Baranco*, 77 Hawai'i 351, 355, 884 P.2d 729, 733 (1994))). Under the de novo or right/wrong standard, this court "examine[s] the facts and answer[s] the question without being required to give any weight to the trial court's answer to it." *Pelosi v. Wailea Ranch Estates*, 91 Hawai'i 478, 487, 985 P.2d 1045 (1999).

### B. Statutory Interpretation

 The interpretation of a statute is also a question of law reviewable de novo, under the right/wrong standard. *See Amantiad v. Odum*, 90 Hawai'i 152, 160, 977 P.2d 160, 168 (1999) (citing *Franks v. City & County of Honolulu*, 74 Haw. 328, 334, 843 P.2d 668, 671 (1993). "When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." *Id.*) (quoting *Gray v. Administrative Dir. of the Court*, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) (internal citations, quotation marks, brackets, ellipses, and footnote omitted)).

## III. DISCUSSION

### A. DeYoung's interest in the pledged HBC stock is garnishable under Hawai'i law.

BOH contends that the trial court erred in granting City Bank's motion to dissolve the garnishee order because DeYoung's pledged stock is either an "effect" or a debt subject to garnishment under HRS § 652–1. City Bank maintains, on the other hand, that because the return of DeYoung's pledged stock is "contingent," in the sense that it may never become due and payable to DeYoung, the stock is not garnishable. City Bank argues, in the alternative, that even if DeYoung's interest in the pledged stock is garnishable, BOH is entitled only to a lien interest which cannot be acted upon until City Bank's "debt" is due and owing.[3] We hold that DeYoung's interest in the pledged stock was garnishable under HRS chapter 652.

HRS § 651–47(b) (1993) expressly provides that

> [a] security or any share or other interest evidenced thereby which is outstanding and in the possession of a person who is entitled to such possession under a security interest or lien or other right of retention therein *shall be reached by garnishment as provided in chapter 652.*

(Emphasis added.) *See also Union Bank v. Federal Deposit Ins. Corp.*, 111 Nev. 951, 899 P.2d 564, 565 (1995) ("even though property may be subject to a pledge agreement it may

---

**3.** City Bank bases this argument on HRS § 652–10 (1993), which provides:

> **Debts payable in future.** If upon disclosure made on oath by the debtor it appears that the garnishee is indebted to the defendant, but that

the debt is not payable and will not become due until some future time, then such judgment as the plaintiff may recover shall constitute a lien upon the debt until and at the time it becomes due and payable.

be reached by timely garnishment") (citation omitted); *Grouse Creek Ranches v. Budget Fin. Corp.*, 87 Nev. 419, 488 P.2d 917, 925 (1971) (stating identical principle).

■ HRS § 652–1 allows the garnishment of "(1) *The goods and effects of the defendant then in the hands of the garnishee;* (2) Any debt then owing from the garnishee to the defendant; (3) Moneys of the defendant then in the possession of the garnishee for safekeeping . . . ; and (4) A portion of the defendant's wages, salary, stipend, commissions, annuity, or net income under a trust[.]" (Emphasis and ellipses added.) This court has defined "[t]he word 'effects' [to denote] property in a more extensive sense than 'goods.' It embraces things in action as well as tangible personal property." *Nichols v. Mossman*, 35 Haw. 772, 777 (1941) (citation omitted and brackets added). As such, this court has held that common stock is "property" or an "effect" subject to garnishment. *Id.*

■ The pledgor of capital stock that is subject to a security interest retains a property interest in that stock notwithstanding the pledge. *See generally* HRS § 490:9–311 (1993). Indeed, Comment 1 to the official text of HRS § 490:9–311 "make[s] clear that in all security transactions under this Article, the debtor has an interest (whether legal title or an equity) which he can dispose of and which his creditors can reach."[4]

Moreover, HRS § 490:9–311 expressly provides for garnishment of a debtor's interest in collateral: "The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, *garnishment* or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default." (Emphasis added.) *See also J.N. Laliotis Eng'g Constr., Inc. v. Mastor*, 600 So.2d 1271, 1273 (1992) (Florida's codification of UCC § 9–311 allows the debtor's interest in a certificated security in the possession of a secured party to be reached by a creditor by legal process upon the secured party); *Altec Lansing v. Friedman Sound, Inc.*, 204 So.2d 740, 741 (Fla. App.1967) (a security agreement "may create a prior lien in favor of the person named in the agreement as creditor on the chattels involved but does not exempt them from a forced judicial sale"); *Union Bank*, 899 P.2d at 565 ("all rights in collateral retained by a debtor may be garnished"); *Brescher v. Associates Fin. Servs. Co.*, 460 So.2d 464, 466 (Fla.App.1984) (comment 1 of UCC § 9–311 establishes the intent to change the common law rule in some states that prohibited the judgment creditor from proceeding against the debtor's interest in personal property covered by a security agreement); *Frierson v. United Farm Agency, Inc.*, 868 F.2d 302, 305 (8th Cir.1989) (allowing a secured creditor to "impair[ ] the status of other creditors by preventing them from exercising valid liens . . . would fly in the face of all Article 9, which is premised on the debtor's ability to exercise rights in the property"); 1A Secured Transactions Under the Uniform Commercial Code § 7A.26[1], at 7A–154 (1999) ("Contrary to what may have been the case under pre-Code law, the existence of the security interest does not preclude the judgment creditor from levying against, attaching or garnishing the collateral.") (Citation omitted.); 6 Am.Jur.2d Attachment and Garnishment § 144 (1963) ("It is provided, in the chapter of the Uniform Commercial Code concerning secured transactions, that the attachment or garnishment of a debtor's rights in collateral is not precluded by a provision in the security agreement which prohibits any transfer or which makes the transfer constitute a default.") (Citations omitted.).

■ Comment 2 to the official text of HRS § 490:9–311 instructs that "in all security interests the debtor's interest in the collateral remains subject to claims of creditors who take appropriate action. *It is left to the law of each state to determine the form of 'appropriate process.'* " (Emphasis added.) As mentioned above, one form of "appropriate process" is garnishment. *See* HRS § 651–47(b). Thus, although the pledged shares of

---

4. "[A] pledge of capital stock is a secured transaction governed by Article 9 of [Hawai'i's version of the] UCC, HRS §§ 490:9–101, et seq." *United*

*Indep. Ins. Agencies, Inc. v. Bank of Honolulu*, 6 Haw.App. 222, 229, 718 P.2d 1097, 1102 (1986).

HBC stock remained subject to City Bank's perfected security interest, DeYoung's rights in those shares were properly transferred by way of garnishment. *See infra* section III.B.

City Bank maintains that because it holds the HBC stock as collateral to secure a loan, its obligation to return the property to the pledgor is contingent, and therefore not garnishable under HRS chapter 652. This argument is unpersuasive.

It is well established that "under our garnishment statutes, HRS Chapter 652, the debt must be owing at the time of the service of the garnishee process upon the garnishee, and that if the debt is contingent, the garnishment lien does not attach." *Employees' Retirement System of the State of Hawaii v. Real Estate Finance Corporation*, 71 Haw. 392, 398, 793 P.2d 170, 173 (1990). *See also Miyashiro v. Yap*, 27 Haw. 297, 297 (1923) ("A debt which is uncertain and contingent, in the sense that it may never become due and payable, is not subject to garnishment.") (Citation omitted.); 6 Am.Jur.2d Attachment and Garnishment § 126 (1963) ("As a general rule, a debt or claim which is uncertain or contingent, in the sense that it may never become due and payable, is not attachable or garnishable.") (Citation omitted.).

Contrary to City Bank's contention, DeYoung's interest in the pledged stock is not contingent on HBC's performance on the underlying loan obligation. Under the express terms of HRS § 490:9–311, and at the time of the service of the garnishee summons,[5] DeYoung had an immediate, unrestricted, and non-contingent right to transfer voluntarily or involuntarily his property interest in the pledged stock subject to City Bank's security interest. *See* HRS § 490:9–311. Indeed, his interest was one that "he [could] dispose of and [that] his creditors [could] reach." *See* HRS § 490:9–311, Comment 1.

In light of the foregoing analysis, the property interest retained by DeYoung in the 2,125 shares of pledged stock, although subject to City Bank's security interest, was properly garnished under HRS chapter 652.

B. *The circuit court erred in granting City Bank's motion to dissolve the garnishment order.*

Although shares of stock subject to a security interest are properly garnishable under HRS chapter 652, City Bank argues that the circuit court erred in ruling that BOH, as garnishor, could sell the shares of stock. BOH maintains that City Bank had no right to prevent BOH from taking possession of and selling the collateral inasmuch as there had been no declaration of default, and, in any case, City Bank's interest continues in the collateral and any proceeds. We agree with BOH's contentions.

Under HRS § 490:9–304(1), "generally a security interest in 'instruments[6] ... can be perfected only by the secured party's taking possession[.]'" *United Indep. Ins. Agencies v. Bank of Honolulu*, 6 Haw.App. 222, 229 n. 10, 718 P.2d 1097, 1102 n. 10 (1986). It is uncontroverted that City Bank took all the necessary steps for perfecting its security interest in the shares of HBC stock. City Bank obtained possession of the shares in April 1994, thereby perfecting its security interest as of that date. As a judgment creditor, BOH became a subsequent lien creditor upon service of the writ of garnishment on the garnishee in July 1997.

Absent a statutory or common law exception, a secured creditor with a perfected security interest in collateral is entitled to priority over a subsequent lien creditor seeking to claim the same collateral. *Shaw Mudge & Co. v. Sher–Mart Manufacturing Co.*, 132 N.J.Super. 517, 334 A.2d 357, 359, 360 (1975); *W.S. Badcock Corp. v. Myers*, 696 So.2d 776 (Fla.App.1996) ("A perfected secured creditor has priority over an unsecured creditor and over a subsequent lien creditor, even the trustee in bankruptcy.") (Citing White & Summers, Uniform Commercial Code § 23–5, at 918.); 1A Secured

---

5. "[T]he garnishable character of the goods or effects or debts involved in any garnishment proceedings are ... determined as of the time of service on the garnishee." *Nichols*, 35 Haw. at 776.

6. HRS § 490:9–105(1)(j) (Supp.1984) defines 'instrument' to include 'security' as defined in HRS § 490:8–102.

Transactions Under the Uniform Commercial Code § 7E.02[3][b], at 7E–9 (1999). Accordingly, City Bank, as a prior perfected secured party, had priority over BOH's claim to HBC's shares.

■■■■ As described above, a debtor's rights in collateral may be involuntarily transferred by way of garnishment. *See* HRS § 490:9–311. Although HRS § 490:9–311 allows the judicial process creditor to encumber the debtor's property, the secured party with a prior security interest is not without remedy. Indeed, garnishment by a judgment creditor does not extinguish the prior security interest or give the judgment creditor priority. Rather, as HRS § 490:9–306(2) provides, such a transfer remains subject to the prior perfected security interest: "a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof . . . and also continues in any identifiable proceeds[.]" In other words, after the transfer, the secured creditor has two alternative assets to look to in order to satisfy the secure obligation: the original disposed collateral and the proceeds generated by the disposition. *See* Secured Transactions Under the Uniform Commercial Code § 7A.15[1], at 7A–62–63 (1999).

■■■■ A garnishing party also has the right to sell the garnished security subject to the interest of the secured party. *Altec Lansing,* 204 So.2d at 741 (collateral subject to a prior security interest "may still be sold by an execution creditor subject to the lien provided in the security agreement"); *J.N. Laliotis,* 600 So.2d at 1273 (stating same principle); *See* 1A Secured Transactions Under the Uniform Commercial Code § 7E.02[3][b], at 7E–9 (1999) ("Property sold in satisfaction of a judgment creditor's claim remains subject to the interest of a prior secured party.")

■■■■ In any case, City Bank could not prevent BOH from taking possession of and selling the collateral because there had been no declaration of default. Under HRS § 490:9–501, "[w]hen a debtor is in default under a security agreement, a secured party

has the rights and remedies provided in this Part and . . . those provided in the security agreement. He [or she] may reduce the claim to a judgment, foreclose or otherwise enforce the security interest by any available judicial procedure." (Brackets added.) "[A] secured party cannot assert its rights under a security agreement to dissolve a writ of attachment or prevent a judicial sale 'absent a declaration that the secured debt is in default and an exercise by the secured creditor of its rights over the collateral.'" *Martens v. Hadley Mem'l Hosp.,* 729 F.Supp. 1391, 1395 (D.D.C.1990) (citation omitted). *See also Frierson,* 868 F.2d at 305 (a secured creditor cannot frustrate enforcement proceedings by a judgment creditor against a debtor where the secured party has neither declared its loan in default nor instituted execution of its affirmative remedies such as acceleration of the loan).

■■■■ In *Frierson,* as in this case, a judgment creditor garnished funds of a debtor in which a bank held a prior, perfected security interest. *Id.* at 302–303. The United States Court of Appeals for the Eighth Circuit held that, although the bank could not defeat the garnishment proceedings because its loan was not in default and because it did not initiate a good faith execution of its affirmative remedies provided in the security agreement, the judgment creditor was required to take the funds subject to the bank's superior security interest. *Id.* at 304–305. *See also United Nat'l Bank of Parkersburg v. Norton Mach. Co.,* 81 Ohio App.3d 101, 610 N.E.2d 486, 490 (1991); 1A Secured Transactions Under the Uniform Commercial Code § 7A.26[1], at 7A–154.[7]

In the instant case, City Bank does not allege the existence of a default on the part of DeYoung.[8] Absent default, an essential prerequisite to the exercise of its rights as a secured party, City Bank was not entitled to immediate possession of the shares or the proceeds from the sale of the shares of stock. In fact, absent declaration of default, City Bank could not dissolve the garnishment order obtained by BOH.

---

7. Once the secured party declares the loan in default and accelerates the debt, it can trace and recapture. *See Frierson,* 868 F.2d at 305. The secured party may alternatively elect to repossess the collateral under HRS § 490:9–503.

8. It appears from the record that garnishment was not specified as an event of default in the security agreement between City Bank and De-Young.

## IV. CONCLUSION

Because a secured creditor may not dissolve enforcement proceedings by a judgment creditor against a common debtor where the secured party has neither declared its loan in default nor instituted execution of its affirmative remedies under the security agreement, the circuit court erred in granting City Bank's motion to dissolve the garnishment order. We therefore vacate the circuit court's October 15, 1997 order dissolving the garnishment order. However, because the circuit court's July 16, 1997 garnishment order did not reference City Bank's prior perfected security interest in the shares, we remand with instructions to the circuit court to amend its garnishment order so as to grant City Bank a superior security interest in the 2,125 shares of pledged HBC stock.